REGAN, Judge.
Plaintiff, Charles E. Roemer, doing business as Roemer Dairies, instituted this suit against the defendants, General Truck Drivers, Chauffeurs, Warehousemen and Helpers, Local No. 270, A. F. of L., Manny Moore, et al., endeavoring to obtain the issuance of an injunction prohibiting the defendants their agents and representatives-from picketing the premises of Roemer Dairies at 5101 Airline Highway; from-threatening, striking, assaulting, or molesting the employees of the dairy and from damaging the plaintiff’s property.
Several exceptions were pleaded, which were disposed of.
*349 Defendants then answered and admitted that the drivers employed by the dairy were on strike but asserted that they were peacefully picketing the dairy and denied the acts of violence alleged by plaintiff.
From a judgment in favor of plaintiff and against the defendants granting a permanent injunction prohibiting the picketing the dairy for the purpose of obtaining a contract[1] contrary to LSA-R.S. 23:822 and 823[2] and from “damaging, molesting, interfering with, or taking possession of any vehicles or property of” plaintiff, defendants have prosecuted this appeal.
The record reveals that this labor dispute arose in 1953 and resulted from defendants’ endeavor to organize plaintiff’s employees. In furtherance of this organizational effort, the defendants initially filed a petition with the National Labor Relations Board, which declined jurisdiction of the dispute since the plaintiff was not engaged in interstate commerce.
Thereafter the defendants acting as representatives of the dairy’s employees requested recognition and a contract from the plaintiff. After considerable negotiations the defendants were unable to obtain *350 a satisfactory contract from the plaintiff, and as a consequence thereof certain employees struck, and in due course a picket line was established at the situs of the business.
On February IS, 1953, plaintiff instituted suit against the defendants endeavoring to enjoin them from threatening, warning, striking, assaulting, molesting, and following with intent to threaten or molest or in any manner interfering with the employees of the plaintiff.
After a trial on the merits, the judge of the lower court ordered that a preliminary writ of injunction be issued herein, which was subsequently made permanent, since he was convinced that the plaintiff had “established by uncontradicted testimony the threats, molestation and acts of violence alleged in his petition and accordingly is entitled to an injunction * * * restraining * * * the defendants from further committing such unlawful acts.”
The foregoing elucidation reveals that only a question of fact was posed for the trial court’s consideration,, and that is whether the evidence adduced during the course of the trial justified the issuance of an injunction. The judge thereof concluded that the plaintiff had “established by uncontradicted testimony the threats, molestation and acts of violence [3] alleged in his petition, and accordingly is entitled to an injunction * * * restraining the named defendants from further committing such unlawful acts.”
The question which this appeal has posed for our consideration is whether that finding of the trial judge is so erroneous and unsupported by the evidence as to warrant a reversal by us.
We have made a careful analysis of the record, and we are convinced that the evidence adduced in 1953 amply supports the conclusions of the trial court.
On appeal the defendants have insisted that conditions [4] which initially provoked the issuance of the injunction have so changed since 1953 that we should modify or revoke the injunction. Of course the record fails to reflect these “changed conditions” enumerated hereinabove by defendants’ counsel; but assuming arguendo that this assertion is a fact, the defendants’ proper remedy is to institute in the lower court a rule to show cause why the injunction should not be modified or revoked; and on the trial thereof, the defendants will have the opportunity of producing sufficient evidence to prove that the passage of time has deprived the picketing of its coercive influence and thus justify the modification or revocation of the injunction.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.

. Sections D and E of the contract read: “Each employee covered by this agreement who, at the time this agreement becomes effective is not a member of the Union, shall become within thirty (SO) days, a member of the Union and remain a member in good standing during the life of this agreement. The Union agrees to admit to membership all present employees of the Company who are covered by this agreement.
“Each employee who is hired after the date this Agreement becomes effective shall become a member of the Union, between the thirty-first (31st) and thirty-sixth (36th) day following the beginning of employment by the Company. Any person newly employed shall be employed only on a thirty (30) day trial basis during which time he shall either be dismissed without recourse or placed on the regular seniority list.”

. “In the interpretation and application of this Chapter, the public policy of this state is declared as follows:
“Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employee. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, of coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.” LSA-R.S. 23:822.
“Every undertaking or promise made, whether written or oral, express or implied, constituting or contained in any arrangement or proposed arrangement of hiring or employment, whether for a definite term or teminable at the will of either of the parties thereto, whereby:
“(1) Either party thereto undertakes or promises to join or to remain a member of some specific labor organization or organizations or to join or remain a member of some specific employer organization or any employer organization or organizations; or
“(2) Either party thereto undertakes or promises not to join or not to remain a member of some specific labor organization or any labor organization or organizations, or of some specific employer organization or any employer organization or organizations; or
“(3) Either party thereto undertakes or promises that he will withdraw from an employment relation in the event that he joins or remains a member of some specific labor organization or any labor organization or organizations, or of some specific employer organization or any employer organization or organizations;
is declared to be contrary to public policy and shall not afford any basis for the granting of legal or equitable relief by any court against a party to such undertaking or promise, or against any other person who may advise, urge, or induce, without fraud, violence, or threat thereof, either party thereto to act in disregard of such undertaking or promise.” LSA-R.S. 23:823

. He also found that some of these acts of violence occurred in the Parish of Orleans which enabled him to assume jurisdiction of the dispute even though the situs of the business is in the Parish of Jefferson.

. The defendants point out that the “company has changed hands, the employees involved for the most part are no longer there, the strikers are not members of the Union or in any way connected with the Union and some of the officers of the Union are no longer with the Union, including Mr. Moore who was president.”