CHASEZ, Judge.
Tenneco, Inc., plaintiff-appellant (Ten-neco herein), is a corporation operating an oil refinery and bulk terminal in St. Bernard Parish, Louisiana. Its property is located in the Chalmette area of that Parish, with its northern boundary near Louisiana Highway No. 39, its eastern boundary adjacent to Paris Road and its southern boundary on the Mississippi River.
Tenneco’s refinery employees are represented by the defendant-appellee, the Oil, Chemical & Atomic Workers Union, Local 4 — 522 (OCAW herein).
When the labor agreement between Ten-neco and OCAW expired at the end of 1968, OCAW commenced a strike of Ten-neco’s Chalmette Refinery on January 5, 1970. The picketing was attended by violence, intimidation, and mass picketing of such proportions as to cause Tenneco to institute this suit against OCAW, Local 4 — 522, and certain of their officers for a temporary restraining order and an injunction.
The district court issued a temporary restraining order on January 8, 1969, and after extensive hearings issued a preliminary and permanent injunction on January 27, 1969, which prohibited any picketing on Tenneco’s property, any picketing that obstructed free ingress and egress to Ten-neco’s property, and prohibited any acts of intimidation or molestation.
The judgment, however, excepted from these prohibitions the part of Tenneco’s property which constituted the levee of the Mississippi River.
Tenneco has appealed from the ruling by the district judge that picketing on the levee of a navigable stream in furtherance of a labor dispute was a public use within the meaning of Civil Code Article 455.
In oral argument to this court, the issue of mootness was raised by a question from the bench. It was raised because the strike out of which this suit and this appeal grew is now over and has been for some time.
In supplemental briefs to this court, OCAW adopted the position that the question was indeed moot; that since the strike which resulted in the injunction being issued was over, the injunction is no longer in existence and that everything included in the injunction is no longer in existence.
Tenneco on the other hand argues that the appeal is not moot because the question involved has nothing whatever to do with the strike but is a question of property law, which concerns the scope of uses the private riparian owner must suffer because of the servitude of public use imposed on riparian owners by LSA-C.C. arts. 455, 457, 665.
Tenneco further argues that a dismissal of its appeal would leave in full force an erroneous judgment that the crown of the levee is a public place where members of the Union or any other person wishing to use it for any purpose might do so with impunity; that insofar as the Union is concerned, it would constitute res judicata against Tenneco in any future action to ex- *248 elude Union members from trespassing on the levee.
This court is in agreement with the position adopted by Tenneco, i. e., that the appeal is not moot. A permanent injunction is a final judgment and so long as it remains in force, it extends the life of the proceeding in which it was granted until it is modified or revoked in a proceeding brought for that purpose in the district court which issued it. American Cyanamid Company v. Roberts, La.App., 180 So.2d 810 (4th Cir. 1965); Roemer v. General Truck Drivers, etc., Local No. 270, La.App., 111 So.2d 348 (4th Cir. 1959).
Since the judgment is still in effect the appellant has the right to appeal any part of it that it feels is unjust or erroneous.
The very purpose of the permanent injunction is to end the violence and illegal picketing. It is executory and continuing as to its purpose although it may be changed to meet changing circumstances. If the injunction dissolves when the strike ends there would be no protection available to the employer if new violence and new illegal picketing arose until the employer again went through the judicial processes of obtaining a temporary restraining order, preliminary injunction and final injunction. A permanent injunction not only guarantees that the present harm will be stopped but guards against it happening in the future.
For these reasons, we find that the appeal of Tenneco is not rendered moot merely because the strike ended and now turn our attention to the merits of the case.
As previously stated, the injunction prohibited any picketing on Tenneco’s property with the exception of that portion which constituted the levee of the Mississippi River.
In his reasons for judgment the trial judge explained the exception in this manner :
“In the opinion of the Court public usage of the levee for passage, for recreational purposes and related activities, for viewing the magnificence of the broad expanse of the Mississippi River, and for any other uses which are not destructive to the primary purpose of a levee are permitted within the purview of Civil Code Article 455. Accordingly, to recognize these rights and to deny defendants the use of said levee for the purpose of peaceful picketing, a right guaranteed to them under the Louisiana Constitution and under the First and Fourteenth Amendments of the United States Constitution, would indeed be a trespass on defendants.”
We cannot agree with the court a quo. The pertinent Articles of the Civil Code are as follows:
“Art. 455 R.C.C. The use of the banks of navigable rivers or streams is public; accordingly every one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like.
“Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands.”
“Art. 457 R.C.C. The banks of a river or stream are understood to be that which contains it in its ordinary state of high water; for the nature of the banks does not change, although for some cause they may be overflowed for a time.
“Nevertheless on the borders of the Mississippi and other navigable streams, where there are levees, established according to law, the levees shall form the banks.”
“Art. 665 R.C.C. Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for *249 the making and repairing of levees, roads and other public or common works.
“All that relates to, this kind of servitude is determined by laws or particular regulations.”
The servitude of public use described in the above Articles has been defined as a use which is incidental to the river, for example, commerce or navigation.
In Hebert v. T. L. James & Co., 224 La. 498, 70 So.2d 102 (1953), the Supreme Court stated that “the servitude so imposed by the codal articles on property bordering a navigable stream was not intended to serve the public for any purpose other than that which is incident to the nature, navigable character, or use of the stream.”
In Lyons v. Hinckley, 12 La.Ann. 655 (1856), the Supreme Court stated:
“ ‘The character of the servitude which is due from the proprietors of the soil is here described, and instead of being for the use of the public at large for all purposes, is only for that which is incident to the nature and the navigable character of the stream washing the land of such proprietor. [Carrollton R. Co. v. Winthrop] 5 [La.] Ann. 36.’ ” * * . *
Finally, in State v. Richardson (1916), 140 La. 329, 72 So. 984 at 988, our Supreme Court made the following statement:
“The ownership of the banks of a navigable river, as recognized by C.C. art. 455, and of the alluvion which is formed ‘ “to any soil situated on the shore of a river or stream,” ’ as recognized by C.C. art. 509, is qualified by the conditions imposed by those articles, and hence the right of use, in both instances, is in the public; but that right is also qualified by the terms in which it is reserved. The use must not only be a public use, but it must be the particular public use specified in the reservation, being, in the one case, that which is incidental to the navigable character of the stream and its use as an avenue of commerce, and, in the other, that ‘ “which is required by law for the public use,” ’ and which, where the stream is nonnavigable, is perhaps more restricted. And, save to the extent that it is so qualified, the ownership is as perfect as law can make it.”
We do not think that Article 455 encompasses picketing on the levee — a decidedly private use — and one not incidental to navigation or commerce on the river.
For the foregoing reasons, we conclude that the trial court erred in that part of its judgment which excepted the crown, of the levee of the Mississippi River from Tenneco’s private property. We hold that picketing on the levee is a private use by one not the riparian owner of the property and not incidental to commerce or navigation on the river and is, therefore, not protected by Articles 455, 457 and 665 of the Civil Code. That portion of the trial court’s judgment is reversed and judgment herein is rendered in favor of Tenneco, Inc. and against the defendants, Oil, Chemical & Atomic Workers Union, Local 4-522, et al. All costs of this appeal to be paid by de f endants-appellees.
Reversed and rendered.