BARRY, Judge.
The United Steelworkers of America (Union) appeals the denial of its motion to dissolve a consent permanent injunction which was issued during a labor dispute in 1979. The issue is the duration of a consent injunction and its applicability to a later strike.
On August 31, 1979 the collective bargaining agreement between the Union and appellee Amax Nickel Refining Company expired and the Union went on strike. On September 2,1979 Amax filed a petition for injunctive relief alleging numerous acts of violence and mass picketing. That same day both parties consented to a temporary restraining order. On September 5, 1979 the Union denied the allegations of violence and reconvened for damages.
On September 12, 1979 the court extended the temporary restraining order through October 2,1979 by consent. On September 25, 1979 a slightly modified injunction was signed.
On October 2, 1979 the parties consented to a permanent injunction which limits the number, spacing and route of pickets and provides that both sides will refrain from enumerated illegal activities. In 1980 a new collective bargaining agreement was signed, ending the strike.
In September, 1987 the Union went on strike after expiration of a collective bargaining agreement. On September 28, 1987 a status conference was held and the court issued an order which states that it viewed videotapes of picket line behavior between September 2 and September 23, 1987 but that no contempt proceedings would be premised on the depicted behavior. On October 28, 1987 the strike was settled.
On November 9, 1987 the Union filed a motion to dissolve the 1979 injunction as a matter of law. The Union argues that the injunction is moot because the 1979 and 1987 strikes had been resolved. The Union claims that allowing the injunction to continue in force indefinitely violates the Little Norris-LaGuardia Act, La. R.S. 23:841-849; La. Const. Art 1 §§ 7 and 9; and the First and Fourteenth Amendments of the United States Constitution.
Amax responds that the Union failed to prove due cause for dissolution, and the consent injunction should be governed by contract law, not labor law.
The court denied the motion based on Tenneco, Inc. v. Oil, Chemical and Atomic Workers Union, Local 4-522, 234 So.2d 246 (La.App. 4th Cir.1970).
The parties acknowledge there are no Louisiana cases interpreting L.S.A. — R.S. 23:846 of the Little Norris-LaGuardia Act.[1] *657 However, to aid in interpreting R.S. 23:844 (another provision of the same act) our Supreme Court in Baton Rouge Coca-Cola Bottling Company, Ltd. v. General Truck Drivers, Warehousemen and Helpers, Local Union No. 5, 403 So.2d 632 (La.1981) referred to case law from other states and federal cases on the Norris-LaGuardia Act.
The Union argues that R.S. 23:846 prohibits a broad prospective injunction and cites several cases which interpret the corresponding provision of the federal act.
In United States Steel Corp. v. United Mine Workers of America, 519 F.2d 1236 (5th Cir.1975), the court found that a broad prospective final injunction against all strikes and other “troubles” without regard to the form and scope of the injunction was prohibited by the Norris-LaGuardia Act. Id. at 1245. That Act requires that a labor injunction prohibit only “such specific act or acts as may be expressly complained of in the bill of complaint or petition filed in such case and as shall be expressly included in said findings of fact made and filed by the court ...” 29 U.S.C. § 109 (1970), quoted in 519 F.2d at 1245-46. R.S. 23:846 contains virtually identical language.
In Drummond Company v. District 20, United Mine Workers of America, 598 F.2d 381 (5th Cir.1979), the court held that the scope of an injunction is limited to the subject matter contemplated in the original petition for injunction. The trial court found the union in contempt of an injunction which had been issued in response to a work stoppage involving nonunion coal hauling. The Fifth Circuit Court of Appeals held that “the injunction must be interpreted in light of the accompanying findings of the district court regarding the subject matter of the grievance underlying the work stoppage.” Id. at 385. The appellate court then found that, at least as to subject matter, the injunction applied to all subsequent work stoppages over nonunion coal hauling.
The court went on to say:
While we have interpreted the subject matter scope of this injunction as restricted to a single subject of dispute, nonunion coal hauling, such specificity does not necessarily authorize its limitless reapplication to subsequent disputes.
Id. at 386.
The court concluded that the trial court had
applied to subsequent and distinct work stoppages an injunction designed to restrict only immediate ongoing strike activity ... No pattern of repeated work stoppages was submitted by the company at that time from which the court might have concluded that future strikes were likely ... rather, at the time of the restraining order the court considered a single ongoing strike which it enjoined.”
Id. at 387.
In support of the same limitations on injunctions, the Union relies on American Cyanamid Company v. Roberts, 180 So.2d 810 (La.App. 4th Cir.1965). There the union moved for dissolution of a permanent injunction which enjoined illegal strike activity. The trial court denied the motion. This Court held, first, that it had procedural jurisdiction to terminate an injunction. Second, the Court considered whether it was proper to terminate an injunction at the end of each strike, only to have the company petition for another injunction at the commencement of unlawful activity during the next strike. The court stated:
[T]he question of the length of life of the injunction must be viewed in light of the requirements of the orderly and efficient *658 administration of the court’s equity powers. The plaintiff has no vested right in the injunction. It is a continuing order, fashioned to meet a specific need, and when that need no longer exists, the injunction should be removed.
Id. at 814.
The Union maintains that, although American Cyanamid made no direct reference to La. R.S. 23:846, the language “fashioned to meet a specific need ...” should be interpreted to carry the same meaning.
Amax relies on Tenneco, supra, in support of its contention that an injunction remains viable through successive strikes. The court in Tenneco stated:
The very purpose of the permanent injunction is to end the violence and illegal picketing. It is executory and continuing as to its purpose although it may be changed to meet changing circumstances. If the injunction dissolves when the strike ends there would be no protection available to the employer if new violence and new illegal picketing arose until the employer again went through the judicial process of obtaining a temporary restraining order, preliminary injunction and final injunction. A permanent injunction not only guarantees that the present harm will be stopped but guards against it happening in the future.
234 So.2d at 248.
The Tenneco court was illustrating the continuing viability of any injunction until it is dissolved after a finding of due cause at a contradictory hearing. The Tenneco court held:
A permanent injunction is a final judgment and so long as it remains in force, it extends the life of the proceeding in which it was granted until it is modified or revoked in a proceeding brought for that purpose in the district court which issued it.

Id.

In pertinent part, R.S. 23:822 states: [T]he public policy of this state is declared as follows:
... Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion [sic] of employers of labor ...
Section 843 of the same statute discusses the public policy behind the strict prerequisites of injunctive relief. “Legal procedure that permits a complaining party to obtain sweeping injunctive relief ... [without compliance with due process requirements] ... is peculiarly subject to abuse in labor litigation ... L.S.A. — R.S. 23:843.”
Section 844 lists six requisites which must be alleged and proved prior to issuance of any injunction in a labor dispute.[2] *659 This statute with its stringent burden of proof must be strictly construed. Baton Rouge Coca-Cola, supra.
Our Supreme Court has stated that the Little Norris-LaGuardia Act is no less valid than the codal articles. Because of special considerations in labor disputes, the legislature established a special set of rules modifying the substantive and procedural rights of parties involved in labor disputes. Baton Rouge Coca-Cola, supra, at 635-6.
The Union chose to consent to the permanent injunction. Neither the Little Norris-LaGuardia Act nor our case law prohibit settlements or consent injunctions.
L.S.A.—C.C. Art. 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
The means of modifying or terminating the injunction are clearly provided in the consent judgment:
This ... will remain in effect until dissolved [sic] by this Court upon due cause shown by either party.
The burden of proving due cause for dissolution rests with the Union, the moving party. The record does not contain any information concerning the negotiations in arriving at the consent injunction. By affidavit, the Union’s attorney states that “no evidence was offered or received at the court’s hearing of the Steelworkers’ motion to dissolve injunction in November of 1987.” The Union’s petition for dissolution it reluctantly concedes that the 1979 injunction may have been applicable to the 1987 strike.
The Union also argues that the court’s refusal to dissolve the injunction violates L.S.A.—Const Art. 1 § 9 which prohibits laws that impair the right of any person to assemble peaceably or to petition the government for a redress of grievances, and it violates L.S.A.—Const. Art. 1 § 7 which prohibits laws that curtail or restrain the freedom of speech or press. The Union contends that language in the injunction is overbroad and can be applied to peaceful picketing in violation of the First and Fourteenth Amendments of the U.S. Constitution.
The purpose and effect of the Little Norris-LaGuardia Act is to protect the workers’ constitutional freedoms. We find no infringement of the Union’s constitutional rights.
The judgment is affirmed.
WARD, J., concurs.
CIACCIO, J., dissents.

. L.S.A. — R.S. 23:846 provides:
No restraining order or temporary or permanent injunction shall be granted in a case *657 involving or growing out of a labor dispute, except on the basis of finding of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction; and every restraining order or injunction granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of in the petition filed in such case and expressly in-. eluded in the findings of fact made and filed by the court as provided herein. The restraining order, or temporary or permanent injunction shall be binding only upon the parties to the suit, their agents, servants, employees and attorneys, or those in active concert and participation with them, and who shall by personal service or otherwise have received actual notice of the same.

. La.R.S. 23:844 provides:
No court shall issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect:
(1)That unlawful acts have been threatened or committed and will be executed or continued unless restrained;
(2) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;
(3) That as to each item of relief granted greater injury will be inflicted upon complaint by the denial thereof than will be inflicted upon the defendants by the-granting thereof;
(4) That no item of relief granted is relief that a court has no authority to restrain or enjoin under R.S. 23:841;
(5) That complaint has no adequate remedy by ordinary legal procedure; and
(6) That the public officers charged with the duty to protect complainant's property have *659 failed or are unable to furnish adequate protection.