785 So.2d 238 (2001)
KAISER ALUMINUM & CHEMICAL CORPORATION
v.
UNITED STEELWORKERS OF AMERICA INTERNATIONAL, AFL-CIO, et al
No. 00-CA-1851.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2001.
Rehearing Denied May 25, 2001.
*240 Mark N. Mallery, Lance A. Bowling, McGlinchey Stafford, New Orleans, Counsel for Kaiser Aluminium & Chemical Corporation, and Steve Olds, Carlos Suarez and Michael Miles, Plaintiffs-Appellants.
Julie Richard-Spencer, Robein, Urann & Lurye, Metairie, Counsel for United Steelworkers of America International, AFL-CIO, Et al, Defendant-Appellee.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
ROTHSCHILD, J.
These proceedings arose out of a labor dispute between Kaiser Aluminum and Chemical Corporation (hereinafter "Kaiser") and the United Steelworkers of America and its local affiliate, USWA Local 5702 (hereinafter "Union"). Both parties filed various rules for contempt alleging violations of a court-approved order, and the trial court rendered written judgment on May 26, 2000. This appeal followed.

FACTS AND PROCEDURAL HISTORY
On September 30, 1998, a strike began when the Union members who were employed by Kaiser walked out of Kaiser's Gramercy facility and formed picket lines at all plant entrances and exits. On November 16, 1998, Kaiser filed a Petition for Temporary Restraining Order and Preliminary Injunction contending that the picketers were impeding access to the plant and harassing those who crossed the picket line in violation of La. R.S. 14:100.1[1]. The trial court denied the TRO, and a hearing on the preliminary injunction was set for November 19, 1998. Prior to the hearing date, the Union filed several exceptions to Kaiser's petition, including an exception of no cause of action. On the *241 hearing date the parties entered into a stipulated order which provided as follows:
STIPULATED ORDER
Based on the stipulation of the parties, the following order is hereby entered:
A. Picketers at the entrance-ways to Kaiser's property will be permitted a maximum period of 45 seconds to picket or patrol in front of any vehicle entering or leaving the property of plaintiff. No more than one picketer will be allowed to picket in front of any vehicle. Other picketers may observe from any nearby location.
B. There will be no threatening, intimidating, harassing, through racially or sexually offensive language or otherwise, of any persons attempting to enter or leave the Kaiser facility in Gramercy, Louisiana or any picketers or other persons on or near the picket line.
C. There will be no placing of tacks, nails, or any foreign objects on the road beds or access ways leading to Kaiser's Gramercy facility, or on any roadbed and/or parking areas used by Kaiser employees, replacement workers or Picketers.
D. By entering into this stipulation, neither party admits to any liability in this proceeding or in connection with the events leading up to this proceeding.
This order applies to the labor dispute between the parties which began on September 30, 1998 and shall remain in effect and continue until such time that the current labor dispute at the Kaiser/Gramercy facility is resolved.
On November 25, 1998, Kaiser filed a Rule for Contempt alleging that the Union was in violation of the stipulated order. On March 12, 1999, Kaiser filed a second rule for contempt and supplemental rules for contempt on April 5, 1999 and May 3, 1999. Kaiser also filed a motion to amend the stipulated order to limit picketing activities based on the numerous violations committed by Union members. The Union responded with several exceptions, and these matters were set for hearing on May 3, 1999.
On the hearing date, the parties agreed to amend the stipulated order. The amendment was read in open court and included a statement that the 45 second rule established in the original order would be strictly enforced. The amendment also added other language, including a prohibition on the use of threatening language and the carrying of dangerous weapons by picketers.
No order of contempt was issued on this date, although the trial court admonished one of the Union members and stated as follows on the record:
Mr. Brignac, I did not find you in contempt, but I will tell you it was real close so far as the testimony was concerned. Again, the Court is being lenient. I'm going to give everyone an opportunity to abide by this court order and the amendments that have been made to the stipulated order no matter how difficult this is, and I realize it's difficult on everyone.
Again, I have to perform the duty that I've sworn by oath to uphold. And if I see anything on that videobecause I saw it today. There was some intimidation, some threats. There's no doubt that it was done; and in essence, right now I'm really not performing my duty the way it should be performed. Because some of the statements that were *242 made on this video are in violation of the court order or the stipulated order. And the stipulated order is an agreement. That was an agreement that was entered into by the attorneys and signed by me. So, everyone has warningif Kaiser does anything in violation of the order, they will be held accountable, and vice versa. So, I would hope that everyone understands this. I sincerely hope that this whole matter comes to a fast conclusion, but that's not in my hands so far as a settlement is concerned. So, I have to invoke or make sure that the orders of this Court are adhered to by all parties. I'm giving everyone warning that from this day forward, I would suggest that everyone adhere to the provisions of the original order and the amended order.
On June 29, 1999, Kaiser filed a third supplemental rule for contempt and a motion to amend the stipulated order. On February 1, 2000, Kaiser filed a fourth supplemental rule for contempt. These matters were heard by the trial court on March 9, 2000, but before the introduction of evidence, the parties agreed to amend the stipulated order for a second time. The pertinent provisions of that agreement reduced the delay periods for picketing from 45 seconds to 25 seconds and provided that no more than five vehicles could stand in line to exit or enter the plant at one time.
Kaiser filed a fifth supplemental rule for contempt which was heard by the trial court on April 10, 2000. After the presentation of evidence, the court held two Union members in contempt for misconduct on the picket line. No jail time was imposed, but these members were removed from the picket line for six months.
Kaiser subsequently filed a sixth and seventh rule for contempt and a motion to amend the second stipulated order. Kaiser argued in this motion that due to the misconduct surrounding the picket line, including the repeated violations of the stipulated order by the picketers and the alleged misconduct by the drivers of vehicles entering the plant, the defendants should be completely prohibited from impeding vehicles which enter or exit the Kaiser plant. One of the items of misconduct listed by Kaiser referred to an incident on March 27, 2000 where Union worker Mark Louque kicked the side of a vehicle which was exiting the Kaiser plant. In this motion, Kaiser also sought an order preventing Union members from trespassing on Kaiser's property without Kaiser's consent.
On April 6, 2000, the Union also filed its own rule for contempt alleging that several Kaiser employees had driven through the picket line without stopping in violation of the stipulated order. These matters were heard by the trial court on May 8, 2000. Following the presentation of testimony and evidence, the court issued contempt orders against Union member Mark Louque and three Kaiser employees, Steve Olds, Carlos Suarez and Mike Miles, whom the court found had violated the terms of the stipulated order. By judgment written dated May 26, 2000, the court ordered that each of these men serve 48 hours in jail prior to June 8, 2000.
In this judgment, the trial court also ordered Kaiser to erect signage at all gates of their facility clearly stating that all vehicles must stop and expect delays at the picket line. On motion of Kaiser, the trial court assigned reasons for judgment on June 15, 2000. By judgment dated June 23, 2000, the trial court denied Kaiser's motion to amend the stipulated order to eliminate all impeding of vehicles. On July 7, 2000, the trial court issued a supplemental final judgment to the May 26, *243 2000 judgment, dismissing Kaiser's seventh supplemental rule for contempt.
From this judgment, Kaiser has filed a devolutive appeal from the trial court's judgment requiring it to erect signage indicating that all vehicles must stop and expect delays at the plant entrance and from the supplemental judgment denying its seventh supplemental rule for contempt and motion to amend the stipulated order. Kaiser also suspensively appeals from the judgment holding Mike Miles, Steve Olds and Carlos Suarez in contempt. In addition, Mike Miles, Steve Olds and Carlos Suarez also filed a motion for suspensive appeal from this judgment of contempt. Union member Mark Louque did not appeal from the judgment rendered against him and that issue is therefore not before us.[2]

DISCUSSION

Kaiser's Appeal
By their first assignment of error, Kaiser contends that the trial court erred in issuing a mandatory injunctive order requiring them to erect signage at all plant entrances and exits indicating that all vehicles must stop for picketers and expect delays of 25 seconds. Kaiser contends that the trial court had no general authority to issue such an order when the relief was not petitioned for by the parties, that the order violates due process, and that the order constitutes an unconstitutional taking of property for which Kaiser is entitled to compensation.
The Union has filed a Motion to Dismiss for Mootness as to this portion of Kaiser's appeal, relying on the fact that the labor dispute between the parties was resolved in July of 2000 and all picketing activities ceased on September 18, 2000. The Union contends therefore that the issue regarding the erection of signs pertaining to the picketing activities is now moot, and any ruling of this Court on the issue will have no practical effect, citing In re Natural Resources Recovery, Inc., 98-2917 (La. App. 1st Cir.2/18/00), 752 So.2d 369, 372-73, writ denied, XXXX-XXXX (La. 5/26/00), 762 So.2d 1104, XXXX-XXXX (La.5/26/00), 762 So.2d 1105.
In opposition to this motion, Kaiser contends that the trial court's order constituted a permanent injunction which is a final judgment that is still in effect. Thus, Kaiser argues the matter is not moot, citing Tenneco, Inc. v. Oil, Chemical & Atomic Workers Union, Local 4-522, 234 So.2d 246 (La.App. 4th Cir.), writ denied, 256 La. 366, 236 So.2d 499 (La.1970), wherein the appellate court rejected an argument of mootness which was urged on conclusion of the strike upon which an injunction was issued. Kaiser further argues that this Court should address this issue because Kaiser could repeatedly be denied appellate review of injunctions issued by the district court where the labor dispute ends prior to the appellate delay. Finally, Kaiser argues that their claim for damages for unlawful expropriation of property precludes a finding of mootness.
A moot case is one that seeks a judgment or decree which, if rendered, can give no practical relief. City of New Orleans Through Dept. of Public Safety and Permits v. Board of Comr's of Orleans Levee Dist., 96-0535 (La.App. 4 Cir. 9/26/96), 694 So.2d 975, 977, writ denied, 96-2820 (La.1/6/97), 685 So.2d 116. A moot question connotes an issue that has been deprived of practical significance or made abstract or purely academic. Perschall v. State, 96-0322 (La.7/1/97), 697 So.2d *244 240, 253. If the case is moot, there is no subject matter upon which the judgment of the court can operate. Perschall v. State, 697 So.2d at 253. See also, In re Natural Resources Recovery, Inc., 98-2917 (La. App. 1st Cir.2/18/00), 752 So.2d 369, 372-73, writs denied, XXXX-XXXX (La.5/26/00), 762 So.2d 1104, XXXX-XXXX (La.5/26/00), 762 So.2d 1105.
The trial court's judgment as to this issue stated as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Kaiser Aluminum and Chemical Corporation, shall erect the following signage at all the gates of their facilities:
1. A "stop" sign which is octagonal in shape, painted solid red, with the word "STOP" lettered in white.
2. A sign, large enough to be seen by approaching vehicles, which should state and appear exactly as follows:
"ALL VEHICLES MUST STOP FOR PICKETERS EXPECT DELAY OF 25 SECONDS"
IT IS FURTHER ORDERED ADJUDGED AND DECREED that the above-ordered signs be placed in the view of vehicles both entering and exiting each of the gates at the Kaiser facilities.
We fail to find that this order was in the nature of a permanent injunction, but rather we find it was specifically directed to the ongoing picketing activities which were conducted during the course of the labor dispute between the parties. In the Tenneco case cited by Kaiser, the court's order prohibiting picketing activities on Tenneco's property was a permanent injunction which was executory and continuing beyond the conclusion of the labor dispute. Tenneco, Inc., supra, 234 So.2d at 248. In the present case, nothing in this order required Kaiser to maintain the signage beyond the conclusion of the dispute when the picketing ceased. In fact, the terms of the stipulated order specifically provided that the order was only to remain in effect until the labor dispute was resolved.
Although Kaiser contends that this order was issued sua sponte, the record does not support this contention. During the hearing on these matters, the trial court stated that it was imposing this order in response to Kaiser's motion to amend the stipulated order. In this motion, Kaiser argued that due to the misconduct of the picketers and to the allegations raised by the picketers regarding the Kaiser employees' conduct in crossing the picket line, "the Court should completely prohibit the impeding of any vehicles." Thus, we find that the issue of whether drivers of vehicles entering and exiting the Kaiser facility were required to stop was presented to the trial court at the hearing held on May 8, 2000. The trial court conducted a full evidentiary hearing on this issue and was within its authority to amend the order in the regulation of this labor dispute.
Further, although Kaiser contends that a finding of mootness of this appeal prevents them from obtaining review of this order, we find no merit in this argument. Following the issuance of this order by the trial court, Kaiser could have sought supervisory writs to this Court or obtained a stay of the order, but Kaiser failed to do so. In addition, we find that the court's order in this case pertained specifically to the activities conducted by the Union in response to this particular labor dispute, and no ruling by this Court on the correctness of the court's order will have any practical effect on any future labor disputes between the parties. Thus, this is not an issue that will permanently evade *245 our consideration sufficient to preclude dismissal on the basis of mootness.
Finally, we find no merit in Kaiser's argument that it is entitled to compensation based on the trial court's order requiring it to erect signage on its property. Pursuant to the provisions of La. R.S. 23:841, the trial court had the authority to allow peaceful assembly of the Union members to seek redress of their grievances. The trial court's order requiring the erection of signage was within that authority, and we fail to find the order constitutes an unlawful expropriation of Kaiser's property.
Thus, under the circumstances presented here, we conclude that any ruling of this Court on Kaiser's claim that the trial court erred in requiring them to erect signage would be purely academic and would have no practical effect. The labor dispute is no longer ongoing and all picketing activities which gave rise to this order have ceased. Thus, we agree with the Union's motion that this issue is moot, and we therefore dismiss this portion of Kaiser's appeal.
Kaiser next contends that the trial court erred in dismissing paragraphs 1-3 of its seventh supplemental rule for contempt. These paragraphs allege that certain specified Union members violated the stipulated order, and Kaiser submitted videotapes to the trial court to support these allegations. Specifically, Kaiser alleges that the Union members stood too close to the vehicles and the picketers allowed more than five vehicles to wait to enter the plant at one time. No testimony was introduced as to these alleged violations, however.
A trial court is granted great discretion in determining whether a wilful violation of its order has occurred. City of Kenner v. Jumonville, 97-125 (La.App. 5th Cir.8/27/97), 701 So.2d 223, 230, writ denied, 97-2890 (La.1/30/98), 709 So.2d 718. The trial court in this case apparently determined that these actions of the specified Union members did not violate the provisions of the stipulated order. We have reviewed the evidence introduced on this issue, including the appropriate videotapes, and we fail to find that the trial court's factual determinations constitute an abuse of discretion. The record fails to contain any evidence regarding an intent to defy the stipulated order by these individuals, and thus the trial court did not err in failing to hold these individuals in contempt.
By its next assignment of error, Kaiser contends that the trial court erred in denying its motion to eliminate all impeding of vehicles by the picketers. Kaiser argued at trial that based on the numerous violations of the stipulated order as alleged by both parties and based on the trial court's inability to enforce the terms of the order, the picketers should be precluded from any impeding of the vehicles entering or exiting the Kaiser plant. Specifically, Kaiser argued that the trial court should have annulled the language of Paragraph A of the stipulated order and enforced La. R.S. 14:100.1, which prohibits the obstruction of public streets.
La. R.S. 23:841 prevents the trial court from issuing a restraining order or injunction prohibiting peaceful assembly of individuals during a labor dispute. It is well-settled that in the absence of proof of violence, fraud or intimidation, a trial court has no jurisdiction to enjoin picketing activities. Johnson v. Milk Drivers and Dairy Employees Union, Local No. 854 195 So. 791 (La.App. 2 Cir.1940). Further, La. R.S. 23:844 governs the grounds for issuance of restraining orders in labor disputes, and sets forth six factors which must be met before activity connected with a labor dispute may be enjoined.
*246 In denying Kaiser's motion, the trial court evidently concluded that Kaiser had offered no lawful basis for a restraint on the picketing activities of the Union members in this case. Kaiser contends that the trial court previously indicated his dislike of delaying traffic during an earlier hearing, and the trial court's ruling is inconsistent with that earlier statement. Although the trial court did state on the record his personal beliefs with regard to the impeding of vehicles, this statement was not binding on the trial court. During the hearing on May 8, 2000, the trial court also complimented the Union members on the record on their efforts in staging a relatively peaceful protest with no substantial acts of violence or disruption to the community. Thus, the trial court apparently believed after hearing testimony and evidence that it was unnecessary to eliminate all impeding of vehicles as requested by Kaiser, and the record supports the trial court's findings on this issue. Under the circumstances presented here, we find no error in the trial court's refusal to enjoin the impeding of vehicles during this labor dispute.

The Appeal of Steve Olds, Carlos Suarez and Michael Miles
The Kaiser employees, Steve Olds, Carlos Suarez and Mike Miles, have also appealed from the trial court's judgment holding them in contempt for driving through the picket line. Appellants argue that the findings of contempt and resulting sentences are in error because there was no lawful order which prohibited appellants' conduct, and there was no showing that appellants wilfully disobeyed a lawful order of the trial court. Appellants also argue that the convictions are a denial of equal protection and that the sentences imposed are excessive.
The wilful disobedience of any lawful judgment or order of the court constitutes a constructive contempt of court. Contempt proceedings in civil cases are regulated by LSA-C.C.P. arts. 221-227 and LSA-R.S. 13:4611. LSA-C.C.P. art. 224 provides in pertinent part:
A constructive contempt of court is any contempt other than a direct one. Any of the following acts constitute a constructive contempt of court:
* * * * * *
(2) Wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court;
A proceeding to hold someone in contempt under this statute is criminal in nature, and therefore all of the constitutional protections afforded persons accused of crimes apply, including the burden of proving guilt beyond a reasonable doubt. State in Interest of R.J.S., 493 So.2d 1199 (La.1986). To find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly and purposefully, without justifiable excuse. In making this determination, the trial court is vested with great discretion. Reeves v. Thompson, 95-0321 (La.App. 4 Cir. 12/11/96), 685 So.2d 575; City of Kenner v. Jumonville, 97-125 (La.App. 5th Cir.8/27/97), 701 So.2d 223, 230, writ denied, 97-2890 (La.1/30/98), 709 So.2d 718.
As stated in its reasons for judgment, the trial court found that the three Kaiser employees had exhibited wilful noncompliance with the terms of the Second Amended Stipulated Order. The trial court specifically found that these individuals "intentionally avoided the picket line by failing to stop when it was obvious that their vehicle was being picketed and by failing to wait the requisite amount of time before crossing the picket line." The *247 court based its findings on the testimony of the witnesses, including the Union members and the three defendants, and on the videotapes of the incidents which were introduced into evidence.
On appeal, appellants first contend that the judgment of contempt is erroneous because there is no lawful order that prohibited their conduct in driving into the plant facility without stopping. The trial court found that the Kaiser employees had violated Section (A) of the Second Amended Stipulated Order which was agreed to by the parties on March 9, 2000 and provides as follows:
A. Picketers at all entrances and exits to Petitioner's Gramercy, Louisiana facility will be permitted a maximum period of 25 seconds to picket or patrol in front of any vehicle entering or leaving Petitioner's Gramercy, Louisiana facility.
No more than 5 vehicles entering Petitioner's Gramercy, Louisiana facility may be delayed by picketers at any given time.
The 25-second rule will be strictly enforced.
No more than one picketer will be allowed to picket in front of any vehicle.
Other picketers may observe from any nearby location that is at least 15 feet away from any vehicle(s) being picketed.
Appellants do not dispute that they are bound by this stipulation of the parties which was approved by the court. However, appellants argue that the stipulated order merely gave the picketers permission to picket vehicles at the plant facility provided that no vehicle was detained for more than 25 seconds. They contend that nothing in this order required vehicles to stop at the entrances and exits when the vehicle was not being picketed.
In support of this position, appellants point to the trial court's order during the contempt hearing requiring Kaiser to erect stop signs requiring vehicles to stop. Appellants argue that in finding them in contempt, the trial court retroactively applied the order to stop to their conduct prior to the issuance of the order. As such, appellants contend that the trial court's application of the stipulated order is unconstitutionally vague and a violation of due process protections.
Further, appellants argue that the evidence fails to support the trial court's finding that they violated the terms of the order. Appellants argue that on the dates in question, their vehicles were not being picketed by Union members and they were therefore justified in driving into the plant without stopping. However, our review of the testimony and evidence in the record reveals otherwise.
Union member Gus Bourgeois, Jr. testified that he was present on the picket line in March of 2000 when vehicles failed to stop at the picket line. Mr. Bourgeois stated that he was walking the line when Michael Miles, the maintenance superintendent at Kaiser, drove into the plant. He stated that he "walked off the curb, proceeded to stop Mr. Miles, and Mr. Miles deliberately went around and sped into the plant." Mr. Bourgeois also stated that he saw Union member Ray Haydel attempt to picket Steve Olds, Kaiser's Human Resources manager. He said he "saw Ray Haydel step off the curb and proceed to picket Mr. Olds, and Mr. Olds just went on around him, wouldn't stop."
Union member Jesse LeBlanc testified that he was walking the picket line when Carlos Suarez came through. Carlos Suarez was known to the Union members as the safety and skills development manager at Kaiser. LeBlanc stated that on this *248 occasion he picketed the vehicle in front of Mr. Suarez', and that Mr. Suarez was "hugging the back of the other car, and when the other one came through, hehe just came through, too." He further testified that he "turned around to walk to the curbing to make my start again, and when I turned around to walk back, I hadn't made but a couple of steps, and Carlos went, ran through the line, snuck through."
At the hearing in this matter, the Union also introduced several videotapes which depict the events as described by these witnesses. We have reviewed these tapes, and find that the evidence supports the trial court's determination that the three Kaiser employees failed to stop to allow the picketers to walk in front of their vehicles as ordered. The activities on the tapes show that it was clear that the Union members were attempting to picket in front of the vehicles entering the Kaiser plant, and that the drivers of the vehicles drove around the picketers.
Further, we find no merit in appellants' arguments that it was unclear whether or not they would be picketed on the dates in question. The Union members were standing on the curb with signs, and were seen walking back and forth in front of the vehicles entering the plant. Under the circumstances presented in this case, we find no error in the trial court's findings that the Kaiser employees failed to allow the Union members to picket as stated in the stipulated order. We conclude that the record in this case shows that appellants were proven guilty of contempt beyond a reasonable doubt.
Appellants also contend that the trial court's interpretation of the second amended stipulated order violates constitutional due process, because the Kaiser employees did not receive actual notice of what activities would be criminalized sufficient to allow a reasonable person to distinguish legitimate activity. The trial court interpreted the stipulated order as it was written: picketers are permitted to patrol in front of any vehicle entering or exiting the plant for a minimum of 25 seconds. It is implicit in this order that for the picketers to conduct this activity, the drivers of the vehicles entering or exiting the plant must stop their vehicles to allow the picketing activity to occur. Without a requirement that the vehicle stop to allow picketing, the order would be rendered meaningless. We therefore reject appellants' argument that a plain reading of the order does not contemplate an obligation to stop in the presence of picketing activity.
The record reveals that the three Kaiser employees who were held in contempt in this case were employed by Kaiser during the entire labor dispute which began over 20 months prior to the incidents giving rise to the contempt orders. These individuals drove into and out of the plant facility several times each day, and were aware of the presence of the picketers who were present on a 24 hour basis. The trial court admonished both the Union members and Kaiser on several occasions that the terms of the stipulated order would be strictly enforced. Under these circumstances, we find no merit in appellants' arguments that the order did not give fair notice of what activities would be contemptuous.
Appellants next argue that the record fails to show that appellants wilfully disobeyed a lawful order of the court sufficient to hold them in contempt. Appellants argued that when they entered the plant on the dates in question, there were no picketers in front of their vehicles, and that they proceeded at a reasonable and safe rate of speed.
*249 The record in this case contains the following testimony:
Steve Olds, the Human Resources manager at Kaiser, testified that on the date in question, he was driving into the Kaiser plant to report to work. He stated he noticed a picketer who was located on the left side of his vehicle next to the curb. Mr. Olds stated that he usually assumes he will be picketed, although on that date, he did not think the picketers would stop him. However, he admitted that the picketer had picketed the car in front of him and was carrying a sign showing that he was picketing.
Carlos Suarez, the safety and skills development manager at Kaiser, testified that he assumes he will be picketed and understands that he must slow down to allow the picketing activity to occur. On the date in question, Mr. Suarez stated he saw a Union member picket the car in front of him and noticed that the picketer was holding a sign. Mr. Suarez admitted he stayed close to the preceding vehicle and continued through because he thought he would not be picketed. Mr. Suarez stated that he is not always picketed, and that on some occasions he is waved through by Union members although he admitted he received no such indication to drive through on this date.
Mike Miles, Kaiser's maintenance superintendent, stated that on the date in question, he did not think he would be picketed because no one was standing directly in front of his vehicle and there were several cars lined up behind him. He stated he normally expects to be picketed, but the Union member was standing on the curb rather than in the street, although he admitted the Union member was holding a sign.
The record also contains the testimony of Gus Bourgeois and Jesse LeBlanc, the Union members who were present on the dates of these alleged violations. Both of these witnesses testified that the appellants were aware of the picketing activity, but nevertheless chose to drive through without allowing their vehicles to be picketed.
In addition, the videotapes introduced into evidence which recorded these incidents show that picketing activities were being conducted by the Union members on the dates in question. We have carefully reviewed the content of these tapes and find that the activities of defendants depicted there support the trial court's determination that defendants drove through the picketing activities without stopping, and in some cases without even slowing down. The evidence shown on the videotape does not support appellants' claim that they drove through in good faith because they did not think they were being picketed.
The trial court in this case found that the Kaiser employees had exhibited wilful noncompliance with the terms of the Second Amended Stipulated Order. The court based its findings upon testimony presented at the hearing and on the videotapes introduced into evidence. As previously stated, we find no merit in appellants' argument that the order was vague. The appellants in this case are long-time Kaiser employees who had been driving through the picket lines for 20 months. Further, although appellants argue that a recent change in the picketing format caused some confusion as to whether their vehicles would be picketed, the evidence presented in this case shows that appellants were aware that they would be picketed but chose not to abide by the stipulated order. Under the circumstances here, we find that it was clear that appellants should have stopped on the dates in *250 question to allow the authorized picketing activity.
The above-cited evidence and testimony were more than adequate for the trial court to find that defendants were in wilful noncompliance with the terms of the order. The trial court apparently chose to believe the testimony of the Union members over that of appellants, and these factual determinations are well-supported by the record. The trial court is in a better position that the appellate court to observe the demeanor and credibility of the witnesses, and in the absence of manifest error, the trial court judgment should be upheld. Our review of the record in this case reveals no manifest error or abuse of discretion in the trial court's judgment. The judgment of contempt will therefore be affirmed.
Appellants next argue that the contempt findings and sentences imposed deny them equal protection under the law because the trial judge held them in contempt while failing to punish Union members for repeated violations of the stipulated order. However, although the record shows that Kaiser filed seven rules for contempt in this matter, alleging hundreds of violations of the order, only four hearings were held on these rules. The other allegations were settled prior to the hearing dates when the parties agreed to the terms of the order and the subsequent amendments.
On the first hearing date on May 3, 1999, the trial court failed to find the Union member guilty of contempt, although the trial court issued a stern warning regarding the consequences of either party violating the order. At the hearing date on March 9, 2000, the trial court did not render a guilty finding, although the court issued a strong warning that any violations of the order would result in stiff jail sentences of 10 days for a first offense. At the hearing on April 10, 2000, the trial court found two Union members in contempt and banned them from the picket line for six months. Further, at the hearing on May 8, 2000, Union member Mark Louque was found guilty of contempt and was sentence to the same 48 hour imprisonment sentence as appellants. However, Mr. Louque elected not to appeal the sentence, but applied to the trial court for leniency. Appellants did not apply for leniency to the court, and it is uncertain whether the trial court would have granted a reduction in sentence in their case as well.[3]
Under the circumstances presented here, we fail to find any disparity or discrimination in sentencing by the trial court in this case. The record indicates that both parties were treated fairly and reasonably by the trial judge based on the evidence presented at the hearings in this case. We find no merit in appellants' argument that their convictions and sentences violate equal protection.
Appellants' final argument on appeal is that the sentences imposed by the trial court are excessive. The punishment for contempt for violation of orders rendered in labor disputes is governed by La. R.S. 23:849, which provides in pertinent part:
The punishment for contempt under R.S. 23:848, may be by fine, not exceeding one hundred dollars, or by imprisonment not exceeding fifteen days, or both.
The sentences imposed in this case are well within these limitations. In fact, the trial court warned the parties that a first offense violation of the order would *251 result in a 10 day imprisonment. The 48 hour sentence is a much more lenient sentence than authorized by statute or than originally threatened by the trial court. Further, the trial court stated on the record that the jail time could be served at the convenience of the parties and on the weekends.
We find that the sentences imposed on appellants are commensurate with the infractions committed in this case. In order for a picket line to exist peacefully, the court must have the authority to impose consequences for violations of court-approved orders. In this case, the appellants' intentional actions in driving through the line placed the picketers in danger. Picketers who are on foot and crossing a roadway have little defense against moving vehicles. Severe harm could occur by individuals if struck by vehicles. We find that the penalties imposed in this case were supported by the record, and we find no merit in appellants' arguments that the sentences are excessive.

CONCLUSION
Accordingly, for the reasons assigned herein, the appeal of Kaiser Aluminum & Chemical Corporation from the judgment of the trial court requiring it to erect signage during the labor dispute is hereby dismissed as moot. In all other respects, the judgment of the trial court dated May 26, 2000 and supplemented on July 7, 2000 is affirmed. Kaiser shall bear all costs of this appeal.
APPEAL DISMISSED IN PART; AFFIRMED IN PART
NOTES
[1] La. R.S. 14:100.1 states in part:

Obstructing public passages
No person shall wilfully obstruct the free, convenient and normal use of any public sidewalk, street, highway, bridge, alley, road, or other passageway, or the entrance, corridor or passage of any public building, structure, water craft or ferry, by impeding, hindering, stifling, retarding or restraining traffic or passage thereon or therein.
[2] By judgment dated June 23, 2000, the trial court reduced the sentence of Mark Louque on his motion to allow him to serve 48 hours of community service rather than jail time.
[3] In the event appellants elect after the rendition of this opinion to petition the trial court for a reduction of sentence, we would expect the trial court would give appellants the same type of treatment it conferred on Mr. Louque.